IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

CATHERINE CLESI,

Civil Action No.:

Plaintiff,

**COMPLAINT FOR DAMAGES**
**JURY TRIAL DEMANDED**

-against-

MARY McCUE,
NASSAU COUNTY POLICE DEPARTMENT,
NASSAU COUNTY, and
NASSAU COUNTY POLICE OFFICER "JOHN" ABRUZZESE,
NASSAU COUNTY DETECTIVE TIMOTHY LEAVEY, and
NASSAU COUNTY POLICE OFFICER JOHN DOES 1–10,

Defendants.
-----------------------------------------------------------------X

The Plaintiff, CATHERINE CLESI, through her attorneys, THE CASSAR

LAW FIRM, P.C., as and for her Complaint against Defendants, respectfully

alleges that she was deprived her civil rights and sustained injury because of the

deprivations of her civil rights as follows:

## I.
## INTRODUCTION

1.     This is a civil rights action under 42 U.S.C. § 1983 and the Fourteenth

Amendment of the United States Constitution arising from the failure and refusal

of Defendants to investigate and arrest a known individual who impersonated a

1

police officer and used that false identity to engage in conduct that caused Plaintiff significant emotional distress and psychological injury.

2.     On or about January 8, 2023, Plaintiff encountered the Defendant, Mary McCue, an individual identifying herself as a police officer.

3.     Despite Plaintiff's repeated and credible complaints, Defendants Police Officers failed to take any meaningful action, displaying deliberate indifference to Plaintiff's rights and to the threat posed by this impersonator.

## II.
## JURISDICTION AND VENUE

4.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because the claims arise under federal law, including the U.S. Constitution and 42 U.S.C. § 1983.

5.     This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in this District under 28 U.S.C. § 1391(b), as the events giving rise to this action occurred within this District and all Defendants reside or are located therein.

## III.
## PARTIES

7.      The Plaintiff, Catherine Clesi, is an adult resident of Levittown, County of Nassau, State of New York, and at all relevant times was a citizen of the United States.

8.      The Defendant, Mary McCue, is an adult resident of Northport, County of Suffolk, State of New York, and at all relevant times was a citizen of the United States.

9.      The Defendant, Nassau County Police Department, is a municipal police agency organized under the laws of the State of New York, responsible for law enforcement within its jurisdiction.

10.     The Defendant, Nassau County, is a municipal entity that oversees the operation and policies of the police department and is responsible for the actions of its employees and agents.

11.     At all times mentioned herein, the Defendant, Police Officer "John" Abruzzese, is employed with the Defendant, Nassau County Police Department.

12.     At all times mentioned herein, the Defendant, Detective Timothy Leavey, is employed with the Defendant, Nassau County Police Department.

13.     The Defendant, John Does Nassau County Police Officers 1–10, are unknown police officers, believed to be officers or officials of the Police Department, who were directly or indirectly involved in the refusal to investigate or take action against the impersonator.

3

## IV.
## FACTUAL ALLEGATIONS

14.    On or about January 8, 2023, Plaintiff encountered the Defendant, Mary McCue, an individual identifying herself as a police officer.

15.    On or about January 8, 2023, Plaintiff was driving home from work and cut through the parking lot located at Newbridge Road, Levittown Parkway, Levittown, New York 11756.

16.    When the Plaintiff exited the parking lot, she noticed a gray 2007 Honda Accord NY registration GNA9097 driven by the Defendant, Mary McCue, following her closely and tailgating southbound on Newbridge Road.

17.    The Plaintiff, who was driving in the left lane, changed lanes to the middle lane and then the right lane, in an attempt to get away from Defendant who was following aggressively and attempting to run Plaintiff off the road. Regardless of which lane Plaintiff chose, the vehicle driven by the Defendant, Mary McCue, kept changing lanes and following closely behind Plaintiff.

18.    The Plaintiff began driving through different side streets on her way home and the vehicle driven by the Defendant, Mary McCue, still continued to follow her.

19.    At times while in the side streets, the Plaintiff would stop and the vehicle driven by the Defendant, Mary McCue, would stop as well and pull up within inches of Plaintiff's bumper and stay parked behind Plaintiff.

20. The Plaintiff continued to drive and eventually came to the intersection of Hempstead Turnpike and Division Avenue in Levittown and the Defendant, Mary McCue, pulled up next to the Plaintiff, attempting to block Plaintiff in, and Defendant, Mary McCue, twice identified herself as an undercover Nassau County Police Officer stating that she was arresting Plaintiff for drunken driving, and demanding that Plaintiff exit her vehicle.

21. The Plaintiff asked the Defendant, Mary McCue, to display her police identification and the Defendant, Mary McCue, refused to provide any identification proving that she was a police officer.

22. The Defendant, Mary McCue, then pulled her 2007 Honda Accord in front of The Plaintiff's vehicle and blocked the Plaintiff from driving away.

23. The Defendant, Mary McCue, exited her vehicle and approached the Plaintiff's vehicle and proceeded to hit the Plaintiff's driver's side window.

24. The Defendant, Mary McCue, was screaming and cursing at the Plaintiff to get out of the car.

25. The Defendant, Mary McCue, was highly intoxicated and/or on drugs.

26. The Defendant, Mary McCue, attempted to open all four (4) doors of the Plaintiff's car, and the Defendant, Mary McCue, started punching all of the Plaintiff's driver side windows, causing the Plaintiff to be alarmed and fearful of

her safety this caused the Plaintiff to fear for her life and to immediately called 911.

27.    The 911 operator was trying to help and talk the Plaintiff through this ordeal and was asking the Plaintiff for Defendant's plate encouraging the Plaintiff to just move the Plaintiff's car to a point where she could read the plate and relay it to the operator.

28.    With 911 Operator's guidance, the Plaintiff was able to provide the plate number. During the 911 call, the Defendant, Mary McCue, went to the back of the Plaintiff's car and took out her phone and took pictures of the Plaintiff's license plate.

29.    When the Defendant, Mary McCue, could not get into the Plaintiff's car, the Defendant, Mary McCue, attempted to squeeze her fingers into the space above the Plaintiff's driver's side window in an attempt to pull the window down.

30.    When the Defendant, Mary McCue, could not pull the window down, she continued to scream and punch the Plaintiff's window.

31.    The 911 Operator stayed on the phone with Plaintiff until the defendant, Nassau County Police Department, arrived at the scene.

32.    When three police cars from the defendant, Nassau County Police Department, responded to the scene within minutes.

6

33. When the police officers from the defendant, Nassau County Police Department, arrived, the Defendant, Mary McCue, was told to get back into her car and pull into the 711 parking lot located on Division Avenue and Hempstead Turnpike.

34. The Defendant, Mary McCue, proceeded to scream and act erratic in the 711 parking lot.

35. The Plaintiff explained to the first responding officer from the Defendant, Nassau County Police Department, what happened, and this officer told the Plaintiff wait and went to speak to other officers from the Defendant, Nassau County Police Department, who were talking to the Defendant, Mary McCue.

36. After about 10 -15 minutes, another police officer from the Defendant, Nassau County Police Department, PO Abruzzese, approached the Plaintiff's car and aggressively asked the Plaintiff if she was "at the bar;" the Plaintiff responded that she was not at any bar, and attemptted to explain that she had just left her job as a nurse in Queens, pointing to her scrubs. The Defendant, PO Abruzzese, cut Plaintiff off and stated, "I did not ask you for a story, you still had time to go to the bar."

37. The Defendant, PO Abruzzese, then walked away, coming back a short time later asking the Plaintiff if she was okay to drive and ordered the Plaintiff to leave the scene immediately.

7

38.    The Plaintiff reiterated that she was perfectly okay to drive and offered to take a breathalyzer test. The Defendant, PO Abruzzese, said that there was no need take a breathalyzer test and again told the Plaintiff that she had to leave the scene immediately in a rude, aggressive manner.

39.    These incidents are all recorded on the officers' body cameras to which I have been denied access.

40.    After leaving the scene, the Plaintiff called the 8th Police Precinct to make sure the Defendant, Mary McCue, was arrested and was told the Defendant, Mary McCue, was not arrested.

41.    When the Plaintiff stated to the desk officer that the Plaintiff wanted the Defendant, Mary McCue, arrested the Plaintiff was told that it would be a huge hassle for her and that it would be "her word against [the Plaintiff's] word."

42.    The desk officer told the Plaintiff that the police knew the identity of the Defendant, Mary McCue, and the Defendant, Mary McCue, would be "under surveillance by their new team."

43.    On or about January 8, 2023 after her nurse shift, Plaintiff went to the 8th Police Precinct to file a complaint and to press criminal charges to have the Defendant, Mary McCue, arrested. At that time, Plaintiff was informed by members of the Defendant police department that they had heard about this "road

rage" incident and they refused to provide the Plaintiff with the identity of the other driver who was a Defendant, Mary McCue.

44.    The Defendant police officers informed the Plaintiff that a high raking police officer who was referred to as a "boss" would come to the Plaintiff's house to take her complaint that evening at approximately 7:30 pm.

45.    Plaintiff went home and patiently waited for this "boss" to arrive. When no one showed by 8:30 pm, Plaintiff once again called the precinct and was told the boss would be there momentarily. The high raking police officer did not arrive at the Plaintiff's house and instead it was Defendant, PO Abruzzese, who had yelled at the Plaintiff and demanded she leave the scene during the incident. The Defendant, PO Abruzzese, was accompanied by PO Dunne, another patrolman.

46.    The Defendant, PO Abruzzese, immediately informed the Plaintiff that their conversation was being recorded and proceeded to tell the Plaintiff that the Defendant, Mary McCue, was impaired and that the police officers sent the Defendant, Mary McCue, home in an Uber.

47.    When the Plaintiff asked if they obtained the identification of the Defendant, Mary McCue, he replied "did I ask you for yours."

48.    The Plaintiff asked the Defendant, PO Abruzzese, why the police officers did not arrest the Defendant, Mary McCue, when the Plaintiff was the

9

victim in this case, and that the Defendant, Mary McCue, terrorized her, that the Defendant, Mary McCue, almost killed her by aggressively driving so close behind Plaintiff, that the Defendant, Mary McCue, impersonated a police officer and that the police officers at the scene witnessed that the Defendant, Mary McCue, was intoxicated and was unable to drive and that the police officers put the Defendant, Mary McCue and her dog in an Uber.

49.    The Defendant police officer stated that he let the Plaintiff's husband drive home too and that he as well did not look safe to drive.

50.    Unrelated to this case the Plaintiff's husband, a retired NYPD Police Officer, suffered a traumatic brain injury, spending over one month in a coma in the NUMC Trauma unit and at times the Plaintiff's husband exhibits slurred speech, especially in traumatic situations.

51.    On January 19, 2023, the Plaintiff meet with the lead Nassau Detective, Timothy Leavey, who discussed the facts and circumstances and informed the Plaintiff that he would obtain the surveillance video from the location which include the 711 Store. The Defendant, Timothy Leavey, also informed the Plaintiff that the Defendant, Mary McCue, would be arrest for several offenses including criminal impersonation of a police officer as a felony and reckless endangerment. The Defendant, Timothy Leavey, did not arrest the Defendant,

Mary McCue, for offenses including criminal impersonation of a police officer as a felony or reckless endangerment.

52. On February 20, 2023, the Defendant, Mary McCue, was issued a deck appearance ticket to appear in Nassau Criminal Court.

53. On March 1, 2023, the Defendant, Mary McCue, was formerly charged with a violation of New York Penal 190.25 (3) Criminal Impersonation in the Second Degree for her crimes committed on January 8, 2023.

54. The Plaintiff filed a formal disciplinary complaint with the Nassau County Internal Affairs Bureau against the police officers involved.

55. The Plaintiff has been advised by the police that the body camera video in this case destroyed.

56. During this period, the Plaintiff was frightened when driving home late at night and changed the Plaintiff's route home. The Plaintiff did not know who the Defendant, Mary McCue, was or why the Defendant, Mary McCue, did this to her. The Plaintiff is a sixty (60) year old pediatric nurse and grandmother who works until midnight or later in Queens so the late night driving could not be avoided.

57. The Defendant, Mary McCue, was the impersonator and asserted authority as a law enforcement officer.

11

58. Relying on this false representation, the impersonator engaged in conduct including but not limited to unlawfully detaining, interrogating, intimidating, or harassing Plaintiff.

59. The Plaintiff later discovered that the Defendant, Mary McCue, was not, in fact, a police officer and that the conduct constituted criminal impersonation under applicable state law.

60. Plaintiff immediately and repeatedly reported the incident to the Nassau County Police Department, providing all available evidence and probable cause to arrest the Defendant, Mary McCue.

61. Despite these credible reports and repeated follow-up efforts, the Police Department failed or refused to investigate, speak to witnesses, collect evidence, or take any other steps toward identifying or arresting the impersonator, the Defendant, Mary McCue, until weeks later and not for all the crimes the Defendant, Mary McCue, committed.

62. Defendants' refusal to act was not based on a lack of evidence, but was a result of deliberate inaction, negligence, and disregard for Plaintiff's rights and safety.

63. As a direct and proximate result of the impersonation and the Defendants' refusal to investigate, Plaintiff suffered emotional trauma, anxiety, fear of retaliation, insomnia, loss of trust in law enforcement, and other psychological

harm. Plaintiff is under a health provider's care for treatment of PTSD as a result of this incident.

## V.
## CLAIMS FOR RELIEF

### COUNT ONE
### 42 U.S.C. § 1983
### VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS
### (Against All Defendants)

64.     Plaintiff realleges and incorporates the above paragraphs.

65.     By failing and refusing to investigate and arrest a known impersonator who unlawfully asserted state authority, Defendants deprived Plaintiff of her rights under the Due Process Clause of the Fourteenth Amendment.

66.     Defendants' conduct constitutes deliberate indifference to Plaintiff's personal security and emotional well-being in violation of 42 U.S.C. § 1983.

### COUNT TWO
### NEGLIGENCE
### FAILURE TO INVESTIGATE OR ENFORCE LAW
### (Against All Defendants)

67.     Plaintiff realleges and incorporates the above paragraphs.

68.     Defendants had a duty to investigate criminal acts and enforce the law in a non-arbitrary, non-discriminatory manner.

69.     Defendants breached that duty by ignoring Plaintiff's complaints and refusing to act on information that a person was unlawfully impersonating a police officer.

70.    As a result, Plaintiff suffered emotional distress and harm reasonably foreseeable from Defendants' negligence.

## COUNT THREE
## INTENTIONAL OR RECKLESS INFLICTION
## OF EMOTIONAL DISTRESS
### (Against All Defendants)

71.    Plaintiff realleges and incorporates the above paragraphs.

72.    Defendants' failure to act in the face of clear and repeated complaints about a police impersonator was extreme and outrageous.

73.    This conduct was either intentional or carried out with reckless disregard for Plaintiff's emotional well-being.

74.    As a direct result, Plaintiff suffered severe and ongoing emotional distress.

## VI.
## JURY DEMAND

75.    Plaintiff demands a trial by jury on all issues so triable.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and award the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages against individual defendants to the extent permitted by law;

C. Reasonable attorney's fees and costs under 42 U.S.C. § 1988;

14

D. Injunctive relief requiring the police department to adopt and enforce policies for investigating impersonation complaints;

E. Such other relief as the Court deems just and proper.

Dated: Huntington, New York
      July 15, 2025

                           Yours, etc.,
                           THE CASSAR LAW FIRM, P.C.
                           /s/    *Christopher J. Cassar*
                           By: Christopher J. Cassar, Esq.
                           Attorneys for the Plaintiff
                           13 East Carver Street
                           Huntington, New York 11743
                           (631) 271-6596
                           cjcassar@cassarlaw.com
                           Cassar File No: 05165

## CERTIFICATION FOR COMPLAINT

STATE OF NEW YORK      )
                               ) ss:

COUNTY OF SUFFOLK      )

CATHERINE CLESI, being duly sworn, deposes and says:

That I am a PLAINTIFF in the within action; I have read the forgoing COMPLAINT and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe it to be true.

The grounds of my belief as to all matters not stated upon my own knowledge are as follows: discussions, letters, and records of the PLAINTIFF.

_____
CATHERINE CLESI

Sworn to before me this
15 th day of July 2025

Notary Public

Christopher J. Cassar, Esq.
Notary Public, State of New York
No.02CA4987347
Qualified in Suffolk County
Commission Expires Oct 15, 2025

15